UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 08-21158-CR-SCOLA

UNITED STATES OF AMERICA

vs.

STEVEN STEINER
_____/

## FACTUAL PROFFER IN SUPPORT OF GUILTY PLEA

The United States of America and Steven Steiner (hereinafter referred to as the "defendant") stipulate and agree that the facts set forth below, which are not necessarily all facts known to the United States or to the defendant, provide a sufficient basis for the defendant's plea of guilty:

Mutual Benefits Corporation (MBC) was a business in Fort Lauderdale, Florida formed on or about October 18, 1994 by three brothers, Joel Steinger, Les Steinger, and the defendant, and another individual named Peter Lombardi. MBC's marketing and business operations depended, among other matters, on the use of the mail and on interstate wire transfers. MBC sold investments called viatical and life settlements to the general public. Viatical and life settlements result when an elderly or terminally ill person sells a life insurance policy to an investor or a group of investors for a cash payment representing a discounted percentage of the policy's face value or death benefit. Assuming

1

that premiums for the policy are paid and that the policy does not lapse for any other reason, the investor receives the full benefit of the policy upon the death of the insured. Estimating the life expectancy of the insured is crucial to the success of the investment.

The defendant and other key MBC personnel, directly and through MBC's sales force and third party sales agents, falsely promised purchasers an allegedly fixed rate of return for investments in viaticals and life settlements. For example, MBC offered purchasers the chance to invest in policies based on life expectancies for insureds of 12, 18, 24, 36, 48, 60, and 72 months, with corresponding fixed returns of 12%, 21%, 28%, 42%, 50%, 60%, and 72%. The defendant participated in the creation of media articles and other materials which emphasized the safety of these investments and the accuracy of MBC's life expectancy determinations. The defendant also participated in the creation of promotional material and training aids provided to the sales force and outside sales agents so they would pass similar representations to the investing public.

Investors were falsely told by the defendant, directly and indirectly, and by others, that as many as 80% of all MBC policies matured on time or early. The defendant and others represented that life expectancies on MBC policies were determined by qualified and independent medical doctors who evaluated the health of the

insured and spoke or consulted with the insured's treating physician. In fact, some of the individuals who signed affidavits or letters providing life expectancies for insureds were either not doctors or not competent to provide any medical opinion. In other instances, a doctor named Clark Mitchell signed letters and affidavits concerning approximately 6,000 insurance policies where life expectancies were actually dictated by codefendant Joel Steinger, the de facto head of MBC, who had no medical training or expertise. Mitchell's representations as to life expectancy were sent to more than 18,000 MBC investors. The defendant and other key MBC personnel concealed the inaccuracy of the statements regarding life expectancy and the fact that the majority of policies which MBC acquired never matured or were late in maturing. Because insureds lived past their estimated life expectancy, investors were not able regain access to their funds as planned while the insured remained alive, and investors suffered financial hardships as a result. The longer lifespan of the insureds also resulted in an annual return on the investment which was significantly lower than the "fixed" return promised by MBC.

Investors who purchased viatical or life settlements were also led to believe that MBC would be responsible for paying premiums for the insurance policies which MBC marketed. Another consequence of the erroneous and unfounded life expectancy determinations is that MBC failed to escrow sufficient funds to pay premiums for

3

policies where the insureds lived longer than the stated estimations. Anthony M. Livoti, Jr., the trustee and agent handling MBC's premium escrow account, applied money from new investors to pay premiums on policies assigned to older investors, creating an unsustainable situation that increased the risk, if not the certainty, of policies lapsing for non-payment of premiums. This increased risk was never disclosed to investors by the defendant or Livoti, each of whom also participated in marketing activities, or by other conspirators. Instead, the defendant and his conspirators caused the sales of increasing numbers of policies, without disclosing the risks of investing, to prevent escrowed premium funds from running out. The fact that insufficient funds existed to cover premiums was known to key MBC personnel, including but not limited to the defendant, Joel Steinger, and Anthony Livoti.

MBC also purchased policies to sell to investors that were inappropriate for viatical or life settlements. These included policies with shrinking face values, policies for term life insurance which would cease to provide benefits after a fixed time period, and group life insurance policies. The issues and risks of investing in these policies were not disclosed to investors, who received the same representations made regarding other policies about the safety of the investment. The defendant was made aware of the problems specific to these policies early in MBC's existence. Nevertheless, the defendant and others continued to

4

mislead investors and sales agents as to the quality and safety of these and other MBC products.

As investors grew increasingly frustrated with the policies that failed to mature, many complained directly to MBC, regulators, and other authorities. Some investors threatened or initiated lawsuits. For investors whose complaints were sufficiently persistent, and for those who pursued legal remedies, MBC would on occasion provide refunds, but only after replacing disgruntled investors by assigning new ones to the same policies, often without changing representations as to life expectancy. These new investors were never advised that they were purchasing interests in policies that had failed to mature for previous investors.

The defendant and his conspirators at MBC continued to engage in the practices described above and to engage in other misrepresentations until May, 2004 when the Securities and Exchange Commission obtained injunctive and other relief against the company and placed it into receivership. At that time, MBC did not have sufficient funds escrowed to pay policy premiums absent funds from new investors. Since MBC was placed in receivership, additional policies have failed to mature as estimated or have lapsed, causing additional losses to investors, with total losses exceeding $800 million.

Had the forfeiture portion of the case proceeded to trial, the government would have established, at least by a preponderance of

the evidence, the standard of proof required for sentencing, that the properties listed for forfeiture in the forfeiture allegations of the Indictments and in the Bills of Particulars for Forfeiture, were properly sought for forfeiture because the properties were involved in and/or were traceable to crimes of conviction and that and that such properties were also the proceeds of, or were derived from, the mail and wire fraud activity described above.

Date: 9/3/13

Date: 8-29-2013

Date: 8-29-2013

By:

WIFREDO A. FERRER
UNITED STATES ATTORNEY

KAREN ROCHLIN
ROGER CRUZ
ASSISTANT UNITED STATES ATTORNEYS

JOAQUIN MENDEZ, ESQ.
ORLANDO DO CAMPO, ESQ.
ATTORNEYS FOR DEFENDANT STEINER

STEVEN K. STEINER
DEFENDANT

6